# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JUNE SESSION, 1997

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 02C01-9701-CC-00043** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **HENRY COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. JULIAN P. GUINN** |
| **MICHAEL RAY GRICE,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (Possession of Controlled Substance) |

**FILED**

**October 1, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

# DISSENTING OPINION

I respectfully dissent from the opinion of my colleagues. Based on the testimony presented at the suppression hearing, I believe that the detention of the Defendant violated his protection against unreasonable searches and seizures as secured by the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution.

I first note that the facts and circumstances surrounding a stop, search or seizure are always of paramount importance in determining whether actions taken by law enforcement authorities are reasonable when judged by constitutional standards. See Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992). Officers must exercise "an escalating set of flexible responses, graduated in relation to the amount of information they possess. " Terry, 392 U.S. at 10, 88 S.Ct. at 1874. Where factual issues are involved in determining a motion to suppress, our rules require

the trial court to state its essential findings on the record. Tenn. R. Crim. P. 12(e). While the trial judge engaged in a colloquy with defense counsel concerning the motion to suppress, the judge made no specific oral or written findings of fact. Testimony of the officers at the motion to suppress was very brief, comprising only twelve pages in the transcript. The burden was on the State of Tennessee to establish the legality of the warrantless search, and a more detailed presentation of the facts would have facilitated appellate review.

Tennessee Highway Patrol Sergeant Edwards testified that on the evening in question about nine state troopers and the sheriff's department were conducting a "saturation" in Henry County and were "checking the taverns." He said that as he pulled into the parking lot of this particular tavern he observed a pickup truck that was turning around in the parking lot. He said that it appeared that the truck may have hit a vehicle which was parked approximately one foot from the bumper of the truck. When asked what made him think there had been a collision, the officer stated that he noticed some damage on the front of the vehicle which was close to the back bumper of the pickup truck. Edwards said that he then blocked the Defendant's truck with his patrol car and got out to speak to the Defendant. The Defendant got out of his truck and both men walked to the rear of the vehicle. The officer was apparently able to determine very quickly that there had not, in fact, been contact between the two vehicles. When the officer was asked what he did after he determined that the Defendant had not hit the other vehicle, the officer stated, "I was going to go inside and continue our search or investigation, you know, inside pertaining to this vehicle to make sure that they hadn't had a problem with Mr. Grice on the inside." Sergeant Edwards

testified that his determination that there had not been a collision was made before the deputies started interrogating the Defendant. Edwards stated that he then went inside the tavern and left the second officer, a deputy sheriff, talking with the Defendant. Once inside the tavern, Sergeant Edwards said the tavern manager told him that there was no problem with the Defendant and when Edwards went back outside, the other officers had placed the Defendant under arrest.

Officer Powell, the deputy sheriff, testified that when the law enforcement officials involved pulled into the tavern in question, he recalled that Sergeant Edwards said that it appeared as though the Defendant's vehicle had hit another vehicle "due to the way the vehicles were positioned when we pulled in." He said that Sergeant Edwards and another officer approached the back of the Defendant's vehicle to see if he had, in fact, hit the other vehicle and that he (the deputy) approached the driver of the pickup. He said that as he spoke to the Defendant, "I noticed that he had the smell of alcohol about his person. His eyes were bloodshot. Upon my approach, he exited the vehicle and appeared extremely nervous about what was going on." He said that while Sergeant Edwards entered the tavern, he requested the Defendant to perform some field sobriety tests. It was during the administering of the field sobriety tests that the officer noticed the bulge in the Defendant's jacket which then led to the ensuing searches.

As Judge Summers notes, an investigative detention of an individual requires only a showing of reasonable suspicion rather than probable cause. Reasonable suspicion must be based on specific and articulable facts indicating

that a criminal offense has been or is about to be committed. Terry, 392 U.S. at 21, 88 S.Ct. at 1880; Pulley, 863 S.W.2d at 30; Watkins, 827 S.W.2d at 294. The articulated fact leading to Sergeant Edwards' blocking the Defendant's truck was that the back bumper of the truck was close to a parked vehicle which appeared to have some damage on it. A deputy sheriff working with Sergeant Edwards apparently pulled in and blocked the Defendant's truck from behind.

Judge Summers states that the fact that the officer "thought" that he had just witnessed the Defendant back into a parked vehicle, coupled with the lateness of the hour and the fact that the Defendant was leaving a tavern, gave the officer reasonable suspicion to suspect that the Defendant had just committed or was in the process of committing an offense. Although not stated by anyone during the hearing on the motion to suppress, the "criminal offense" which the officer suspected the Defendant was "about to commit" was apparently not notifying the owner or operator of the parked vehicle that he had hit it. See Tenn. Code Ann. § 55-10-104. While the officer's suspicion certainly could reasonably have led him to examine the vehicle he "thought" the Defendant had hit, I do not believe that his suspicion was based upon specific and articulable facts such that blocking the Defendant's vehicle with his patrol car was justified.

> The reasonableness of a stop turns on the facts and circumstances of each case. In particular, the Court has emphasized (i) the public interest served by the seizure, (ii) the nature and scope of the intrusion, and (iii) the objective facts upon which the law enforcement officer relied in light of his knowledge and experience.

Pulley, 863 S.W.2d at 34 (citing United States v. Mendenhall, 446 U.S. 544, 561, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980) (Powell, J., concurring)). Here,

-4-

Edwards suspected that a collision had occurred and stopped the Defendant's vehicle ostensibly to protect the public from a traffic violation. He based his response on the fact that he saw what looked like damage to another car and that the vehicles were close together. Apparently, Edwards also based his further "investigation" on a factually unsubstantiated hunch that there had been trouble with the Defendant in the tavern.

In any event, whatever reasonable suspicion the officer had certainly disappeared when he quickly determined that no collision had occurred. Even though Sergeant Edwards quickly determined that no collision had taken place, he said that he immediately went inside to "continue our search or investigation." As Judge Summers states, at that time the officer did not have any lawful justification to detain the Defendant further and certainly had no reasonable suspicion that the Defendant had committed a crime inside the tavern. Such further investigation was not "reasonably related in scope to the justification for their initiation," which here was a possible minor traffic collision. Terry, 392 U.S. at 29, 88 S.Ct. at 1884. Thus, any further detention of the Defendant amounted to an intrusion that exceeded the scope of a constitutionally permissible stop. See United States v. Blum, 614 F.2d. 537, 539 (6th. Cir. 1980). Judge Summers concludes, therefore, that any evidence which might have been found inside the tavern would have been illegally obtained and subject to suppression. To establish that a defendant's Fourth Amendment rights have been implicated, it must be shown that the state infringed upon "an expectation of privacy that society is prepared to consider reasonable." United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Because the Fourth Amendment protects people and not places, I believe that evidence obtained

from a search of the Defendant should be suppressed, not evidence that might have been obtained from the tavern. See Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967).

Judge Summers concludes that when Deputy Powell went to question the Defendant, he had not conferred with Sergeant Edwards and was thus unsure of whether the Defendant had or had not committed any crime. He therefore concludes that his questioning of the Defendant was supported by reasonable suspicion. Sergeant Edwards testified that he had already determined that no collision had taken place before the deputies started questioning the Defendant.

Judge Summers concludes that the conduct of Sergeant Edwards, after determining that the Defendant had not backed into a parked car, "was not unreasonable but exceeded constitutional parameters." Because the United States and Tennessee Constitutions prohibit only unreasonable searches and seizures, I believe if the officer's conduct in detaining the Defendant was not unreasonable, then it was not constitutionally prohibited.

Based on the totality of the facts and circumstances that I glean from this record, I believe that the detention and subsequent search of the Defendant do not pass the test of reasonableness guaranteed all of our citizens by the United States and Tennessee Constitutions.

For these reasons, I respectfully dissent.

_____
DAVID H. WELLES, JUDGE